UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:22-CR-36 JD |
| MATTHEW RICE | |

## OPINION AND ORDER

The Defendant, Matthew Rice, has moved for the one count indictment against him to be dismissed. (DE 28.) Mr. Rice argues the indictment should be dismissed as the statute underlying the charge, 18 U.S.C. § 922(g)(1), is facially unconstitutional in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). Further, Mr. Rice argues this statute is unconstitutional as applied to him as his underlying felony conviction is for a non-violent offense. For the following reasons, this motion will be denied.

### A. Background

A federal grand jury returned a single count indictment against Mr. Rice, charging him with knowingly possessing a firearm on or about April 11, 2022, after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). (DE 10.) For the limited purpose of adjudicating this motion, the Court assumes these alleged facts to be true. The Court will reiterate that Mr. Rice remains presumed

innocent of the charges against him, and the Court takes no position on the question of his guilt, or the veracity of any factual allegation presented by the Government.[1]

### B. Legal Standard

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). A defendant can make such a motion on the basis that the charged offense is based on an unconstitutional statute. *United States v. Holden*, 2022 WL 17103509, *2 (N.D. Ind. Oct. 31, 2022) (internal citations omitted).

A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. Mr. Rice brings both types of challenges in his motion. To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415, 418 (2015). To succeed on an as-applied challenge, the moving party must show it is unconstitutional because the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

### C. Discussion

Mr. Rice's motion challenges the constitutionality of 18 U.S.C. § 922(g)(1). This statute provides that "[i]t shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Mr. Rice argues that, as applied to him, § 922(g)(1) is unconstitutional as the Second Amendment does not permit the government to categorically bar individuals convicted of non-violent felonies from possessing

---

[1] The Government's response proffered additional, more specific, facts about the underlying conduct for the charge. In his reply, Mr. Rice strenuously objected to the Court considering these facts. This objection is moot as none of the additional proffered facts are necessary to adjudicate this motion.

firearms. Mr. Rice's facial challenge argues that § 922(g)(1) violates the Second Amendment because there is no historical tradition of categorically barring felons from possessing firearms.

If a statute as applied to a defendant is constitutional, then a facial challenge to that statute should also fail as the statute will not be unconstitutional in all applications. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Therefore, the Court will first address Mr. Rice's as-applied challenge and only advance to his facial challenge if necessary.

### (1) *The Bruen standard for applying the Second Amendment*

Mr. Rice argues that this case must be dismissed because 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment to the United States Constitution. Therefore, the Court must analyze and apply the Second Amendment jurisprudence articulated by the Supreme Court.

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court concluded that the Second Amendment confers "an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). In reaching this conclusion, the Court recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. Relevant to this case, the Court also warned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* In a footnote, the Court went on to classify these traditional restrictions on firearm possession as a non-exhaustive list of "presumptively lawful regulatory measures." *Id.* at 627 n. 26.

In *Bruen*, the Supreme Court built upon its prior holdings to further define the scope of the Second Amendment right. The Court described its earlier Second Amendment decisions as

"recogniz[ing] … the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." 142 S.Ct. at 2122. (citing *Heller*, 554 U.S. 570; *McDonald v. City of Chicago*, 561 U.S. 742 (2010)). The *Bruen* Court went on to lay out the methodology lower courts should utilize in reviewing Second Amendment challenges.

Prior to *Bruen*, the various circuit courts had largely converged on a two-step framework for analyzing Second Amendment challenges. *Id.* at 2126. At the first step, the government could justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the Second Amendment right as originally understood. *Id.* At the second step, the courts analyzed how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right. *Id.*

In *Bruen* the Court stated that this test was "one step too many." *Id.* at 2127. The Court held that the first step of this framework was broadly consistent with *Heller*, but the "means-end scrutiny" of step two was inconsistent with the Second Amendment and the appropriate methodology centers on the "constitutional text and history." *Id.* at 2127–29.  The Court articulated that the proper standard is as follows:

"In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Koningsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Phrased another way, this test is composed of two prongs. The first prong is determining whether the plaint text of the Second Amendment covers the conduct at issue. *Id.* at 2129, 2134–

35. The second prong is determining whether the Government has established the regulation is consistent with the historical tradition of firearms regulation in the United States.[2] *Id*. at 2129–30.

The Supreme Court stated that the second prong would require the use of "historical analogies" and reasoning by analogy as is commonly done by lawyers and judges.[3] *Id.* at 2132. Consequently, in comparing a historical firearm regulation and a modern one, the key determination to be made is whether the two are "relevantly similar." *Id.* The *Bruen* Court did not provide an exhaustive survey of the features that could render regulations relevantly similar but found that *Heller* and *McDonald* outlined at least two: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. Phrased differently, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'*central*'" considerations when engaging in an analogical inquiry." *Id.* at 2133 (quoting *McDonald*, 561 at 767 (itself quoting *Heller*, 554 U.S. at 599)).

---

[2] The Court would note that Seventh Circuit precedent appears to suggest that in the case of a challenge to a "presumptively lawful" regulation, the burden on prong two may shift from the Government to the challenger. *See Hatfield v. Barr*, 925 F.3d 950, 953 (7th Cir. 2019) ("If the subject were something other than a felon-dispossession statute, the Attorney General would bear the burden of justification"). As it is unclear whether that holding applies post-*Bruen*, neither party raised the issue in this case, and this question is not dispositive to this case; the Court applied the standard exactly as articulated in *Bruen* and placed the burden on the Government. The Court only notes this issue to encourage inquiry in future cases when this issue might be dispositive.

[3] Mr. Rice's motion seems to argue that if the regulation in question affects a societal problem that has persisted since the 18th century and there is no historical twin to the regulation, the Government loses and is unable to argue an analogical regulation existed. (DE 28 at 18–19.) Mr. Rice appears to back away from this proposition in his reply brief, however. (DE 38 at 10–12.) This is a wise concession. Mr. Rice's characterization of the *Bruen* test in his initial motion is plainly contrary to the text of *Bruen*, which requires a similar regulation but not a twin. 142 S.Ct. at 2133. Moreover, such a reading would render *Bruen*'s holding illogically restrictive. *See United States v. Kelly*, 2022 WL 17336578, *2 (M.D. Tenn. Nov. 16, 2022) ("The court's investigation [under *Bruen*], therefore, cannot be so simple as just comparing the modern law under review with the laws of a couple of centuries ago, like a redline comparison in a word processing application."); *United States v. Jackson*, 2023 WL 2242873, *12–13 (D. Md. Feb. 27, 2023) (same, collecting cases).

The Court further noted that this analogical reasoning is "neither a regulatory straitjacket nor a regulatory blank check." *Id.* While warning courts to not "uphold every modern law that remotely resembles a historical analogue," the Court also clarified that the Government is only obligated to identify a "historical *analogue*, not a historical *twin*." *Id.* (internal citation omitted). Therefore, even if a modern regulation is not a "dead ringer" for a historical precursor, it may be sufficiently analogous to pass constitutional muster.[4] *Id.*

### (2) *Mr. Rice's as-applied challenge*

The Court will begin with Mr. Rice's as-applied challenge. This challenge argues the government may not categorically disarm individuals who have been convicted of non-violent felonies.[5] For the following reasons, the Court disagrees and will reject Mr. Rice's as-applied challenge.

(a) *The Bruen decision did not disturb existing Seventh Circuit precedent which forecloses Mr. Rice's as-applied challenge*

The first reason that Mr. Rice's as-applied challenge fails is because nothing in the *Bruen* decision indicates that it upsets existing circuit precedent upholding § 922(g)(1) as applied to non-violent felons.

---

[4] *Bruen* also stated that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 142 S. Ct. at 2131 (emphasis added). Some courts have read this language as creating a more stringent standard of review for gun regulations aimed at societal ills dating to the Founding era, and Mr. Rice implicitly urges this Court to do the same. *See e.g. United States v. Holden*, 2022 WL 17103509, *3 (N.D. Ind. Oct. 31, 2022); *United States v. Lewis*, 2023 WL 187582, *4–5 (W.D. Okla. Jan. 13, 2023); (DE 38 at 11.) While the Court does not need to decide this issue, it will note its skepticism of this conclusion for the reasons noted by other sister courts. *See Jackson*, 2023 WL 2242873 at *12–13. To the extent there is a distinction between "distinctly similar" and "relevantly similar" it does not help Mr. Rice's case. The Court finds that the Government's proffered historical analogues would satisfy either of these standards.

[5] The Government does not dispute that the underlying felony conviction for Mr. Rice's instant § 922(g)(1) prosecution, based on his April 2022, possession of a firearm, is a non-violent crime.

As previously mentioned, in *Heller*, the Supreme Court expressly noted that its decision should not be construed as casting doubt on the constitutionality of long-standing regulations such as prohibiting felons and the mentally ill from possessing firearms. 554 U.S. at 626. The Supreme Court subsequently reaffirmed its language regarding these presumptively lawful restrictions in *McDonald*, 561 U.S. at 786. Consequently, in reviewing post-*Heller* and *McDonald* challenges to the constitutionality of § 922(g)(1) the lower federal courts approached the regulation as "presumptively lawful" and uniformly upheld the statute including as applied to non-violent felons. *Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019) (upholding § 922(g)(1) as applied to non-violent felons) (collecting cases). In *Bruen*, the Supreme Court once again reaffirmed these passages from *Heller* and *McDonald*.[6] On its face this language suggests that § 922(g)(1) is constitutionally valid and nothing in *Heller*, *McDonald*, or *Bruen* should be read to the contrary.

Mr. Rice devotes considerable energy to arguing that this language in *Heller* is mere dicta which this Court should disregard and that it has been superseded by the *Bruen* framework. The Court is unpersuaded by his arguments for three reasons. First, the Court is skeptical this language can be characterized as mere dicta given it served to limit the scope of the *Heller* decision and has been reaffirmed by the Supreme Court in *McDonald* and *Bruen*. The Supreme Court's repeated limitation of its Second Amendment jurisprudence to avoid disturbing "presumptively lawful" regulations might not be an unequivocal endorsement of those

---

[6] The majority opinion in *Bruen* does not expressly restate these passages, but stated its holding is "in keeping with Heller" which indicates it is consistent with *Heller* and *Heller's* progeny. 142 S.Ct. at 2126. Further, six of the nine Justices reaffirmed these passages from *Heller*, or their substance, in concurrences or dissents. *Id.* at 2157 (Alito, J. concurring) ("Nor have we disturbed anything that we said in Heller or McDonald … about restrictions that may be imposed on the possession or carrying of guns."), 2162 (Kavanaugh, J. concurring) (expressly reaffirming the language of *Heller*), 2189 (Breyer, J. dissenting) (same).

regulations' constitutionality, but it is clearly a warning to lower courts to exercise caution in applying the holdings of *Bruen*, *McDonald*, and *Heller*.

Second, dictum of the Supreme Court is generally binding upon lower courts. *Reich v. Continental Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994). The Seventh Circuit has expressly recognized the importance and guiding authority of these passages from *Heller* in defining the scope of the Second Amendment. In *United States v. Skoien*, 614 F.3d 638, 640–41 (7th Cir. 2010) (en banc), the Seventh Circuit found that it was bound to respect the message conveyed by *Heller*'s language regarding longstanding, presumptively lawful restrictions. Specifically, the court found that these passages of *Heller* were instructions that "*some* categorical limits are proper," that those limits are part of the "original meaning" of the Second Amendment, and that filling in the details was to be left to the people's elected representatives. *Id.* Additionally, in an unpublished decision after *Bruen*, the Seventh Circuit rejected a facial challenge to § 922(g)(1) by a violent felon, in part by noting that the Supreme Court has declined to question the validity of laws barring felons from possessing firearms. *United States v. Gonzalez*, 2022 WL 4376074, *2 (7th Cir. Sept. 22, 2022) (unpublished). This recent decision, while unpublished, reflects that the Seventh Circuit does not consider *Bruen* to have disturbed existing precedent on laws regulating felon possession of firearms.

Third, Mr. Rice's position requires the Court to find that every other circuit and district court which has considered this language and concluded it is relevant to interpreting the scope of the Second Amendment, to have been wrong. The Court finds the possibility of such a systemic misapprehension to be unlikely. The Court finds this to be unlikely because of how many courts have concluded that these passages help define the scope of the Second Amendment and, conversely, because Mr. Rice has not cited to a single legal authority which shares his view. *See*

*e.g. Kanter*, 919 F.3d 442 (collecting pre-*Bruen* circuit court cases). In fact, as the Government notes in their response, § 922(g)(1) has been uniformly upheld by federal courts when challenged on the basis of *Bruen*. (DE 33-1 (appendix to Government response collecting post-*Bruen* cases upholding § 922(g)(1).) Therefore, the Court cannot agree with Mr. Rice that the passages of *Heller* describing the prohibition on felons possessing firearms as longstanding and presumptively lawful should be disregarded.

The Court is also unpersuaded by Mr. Rice's contention that the *Bruen* framework in some way vacated or superseded *Heller*. In addition to the previously discussed reasons, this interpretation is contrary to the explicit language of *Bruen* which stated the decision was "in keeping with *Heller*." 142 S.Ct. at 2126. Moreover, *Bruen* expressly reaffirmed the analytical method deployed by *Heller* and used it to resolve the challenge to the New York statute at issue. *Id.* at 2134–56. While *Bruen* certainly built upon *Heller* and provided further direction to the circuit courts on how to analyze Second Amendment challenges, the conclusion that *Bruen* superseded *Heller* is a step too far.

Therefore, the Court finds that *Bruen*, "in keeping with *Heller*" did not overturn or otherwise disturb the existing body of Seventh Circuit precedent concluding § 922(g)(1) is constitutional as applied to non-violent felons. 142 S.Ct. at 2129. The Court's conclusion on this point is shared by at least four sister courts within the Seventh Circuit and others across the nation. *United States v. Braster*, 2023 WL 2346282, *2 (N.D. Ind. Mar. 2, 2023) (holding the Second Amendment only protects law-abiding citizens and that the *Bruen* decision does not upset the precedent established by *Kanter*); *United States v. Price*, 2023 WL 1970251, *3–4 (N.D. Ill. Feb. 13, 2023) (upholding § 922(g)(1) as applied to non-violent felons based on pre-*Bruen* Seventh Circuit precedent); *United States v. Garrett*, 2023 WL 157961, *2–3 (N.D. Ill.

Jan. 11, 2023) (upholding § 922(g)(1) in part based on pre-*Bruen* Seventh Circuit precedent); *United States v. Gay*, No. 4:20-cr-40026, DE 412 (C.D. Ill. Dec. 5, 2022) (same); *see also United States v. Farley*, 2023 WL 1825066, *2–3 (C.D. Ill. Feb. 8, 2023) ("Properly understood, *Bruen* did not overturn, abrogate, or otherwise suggest that the longstanding prohibitions identified in *Heller*, including the prohibition of possession of firearms by felons, may no longer be lawful." (internal quotations omitted) (collecting cases for this proposition)). This means the Seventh Circuit's holding in *Kanter* upholding § 922(g)(1) as applied to non-violent felons remains valid and binding precedent which precludes Mr. Rice's as-applied challenge.[7] 919 F.3d 437. The failure of Mr. Rice's as-applied challenge means that his facial challenge to § 922(g)(1) fails as well. Therefore, Mr. Rice's motion must be denied.

Even if Mr. Rice's challenge was not foreclosed by circuit precedent, the Court finds, in the alternative, his challenge would fail on the merits of the *Bruen* test. To illustrate this, the Court will apply the two-prong analysis laid out in *Bruen*.

(b) *The Court assumes, without deciding, Mr. Rice is within the protective ambit of the Second Amendment*

The first step of a Second Amendment challenge is deciding whether the regulated conduct falls within the scope of the Second Amendment's plain text. *Bruen*, 142 S.Ct. at 2129–30. Therefore, the Court must determine whether Defendant, presumed for this motion to be a convicted individual as prohibited under § 922(g)(1), is among those protected by the Second Amendment.[8]

---

[7] The fact that Justice Barrett, who wrote a dissent favoring Mr. Rice's as-applied challenge position while on the Seventh Circuit, now sits on the Supreme Court is unavailing to Mr. Rice. (*See* DE 28 at 4.) Dissents are not binding precedent, and that fact does not change because their authors are elevated to the Supreme Court of the United States.

[8] The parties do not dispute that the mere conduct of possessing a firearm would be protected by the Second Amendment.

The Government argues that, as a convicted felon, Mr. Rice is not considered to be a part of "the people" for purposes of the Second Amendment as the Amendment's protections only extend to law-abiding citizens. As this Court noted in adjudicating another *Bruen* challenge, this is known as the civic virtue theory of the Second Amendment. *United States v. Posey*, 2023 WL 1869095, *5–6 (N.D. Ind. Feb. 9, 2023). There is historical evidence supporting this theory and the theory is at the heart of an ongoing debate among federal jurists.[9] *Id.* Further, while the Seventh Circuit has previously discussed the theory in at least three decisions prior to *Bruen*, it has never reached a definitive ruling on its merits. *Id.* Prior to *Bruen*, several federal circuit courts had endorsed this theory, at least as relating to felons. These courts concluded that felons, including non-violent felons, fell outside the scope of the Second Amendment's protection. *Kanter*, 919 F.3d at 447 (recognizing cases from several circuits reaching this conclusion). Following *Bruen*, two federal circuit court panels have discussed the civic virtue theory and reached opposite conclusions on its merits. *Compare Range v. Att'y Gen.*, 53 F.4th 262 (3d Cir. 2022) (vacated for rehearing en banc) (upholding § 922(g)(1) as applied to non-violent felons by finding felons are outside "the people" protected by the Second Amendment) *with United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023)[10] (rejecting the civic virtue theory and striking down 18 U.S.C. § 922(g)(8)); *United States v. Rahimi*, 2023 WL 2317796, *4–5 (5th Cir. Mar. 2, 2023) (same).[11]

---

[9] The Court incorporates by reference its prior discussion of the historical support for the civic virtue theory in *Posey*. This includes but is not limited to, the repeated characterization of the Second Amendment right as belonging to "law-abiding citizens" in *Bruen*. *See id.* at *6 n.5.

[10] The Court will note that the Attorney General has indicated the Department of Justice would seek further review of the decision. Department of Justice, Office of the Attorney General, Press Release No. 23-136, Statement from Attorney General Merrick B. Garland Regarding United States v. Rahimi (Feb. 2, 2023).

[11] The 5th Circuit has subsequently withdrawn and substituted the original opinion. The substituted opinion reaches the same conclusion, relying on the same reasoning as the original opinion.

In reviewing *Bruen* challenges to federal firearms laws, our sister court, the Northern District of Illinois, has twice held that the Second Amendment's protection only extends to law-abiding citizens. *Price*, 2023 WL 1970251, at *4 (upholding § 922(g)(1) and distinguishing *Rahimi*); *United States v. Seiwert*, 2022 WL 4534605, *2 (N.D. Ill. Sept. 28, 2022) (upholding 18 U.S.C. § 922(g)(3)); *see also Garrett*, 2023 WL 157961 at *2 (upholding § 922(g)(1) and noting that the Supreme Court's Second Amendment jurisprudence suggests the right focuses on law-abiding citizens). While this motion was pending, two fellow judges within this District reached the same conclusion in rejecting challenges to § 922(g)(1). *Braster*, 2023 WL 2346282 at *2 (holding the Second Amendment only protects law-abiding citizens and that the *Bruen* decision does not upset the precedent established by *Kanter*) (Brady, J.); *see also United States v. Clark*, 2023 WL 2346284 (N.D. Ind. Mar. 2, 2023) (same); *United States v. Tribble*, 2023 WL 2455978, *2–3 (N.D. Ind. Mar. 10, 2023) (agreeing with *Braster* that the Second Amendment only protects law-abiding citizens) (Simon, J.).

Additionally, as the Government notes, there is support in the historical record that the right to bear arms was not understood, at the time the Second Amendment was ratified, to extend to felons. During the states' constitutional ratification conventions three proposals were made regarding restrictions in the right to bear arms which would have excluded felons. *United States v. Coombes*, 2022 WL 4367056, *6 (N.D. Okla. Sept. 21, 2022) ("no law shall be passed for disarming the people or any of them *unless for crimes committed*, or real danger of public injury from individuals.") (citing 2 Bernard Schwartz, The Bill of Rights: A Documentary History, 665 (1971) (discussing the Pennsylvania convention)); ("Congress shall never disarm any citizen, unless such as are or have been in actual rebellion.") (citing 1 Jonathan Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution, 326 (1836) (discussing

12

the New Hampshire convention)); ("the right to keep arms extended only to 'peaceable citizens,' not to criminals") (citing Stephen P. Halbrook, The Founders' Second Amendment: Origins of the Right to Bear Arms, 206 (updated ed. 2008) (discussing the Massachusetts convention)).

Mr. Rice argues that these proposals are not persuasive because they were considered but ultimately rejected. Mr. Rice interprets this as a rejection of these provisions on the basis they were incompatible with the public understanding of the right to bear arms. While these proposals were not ultimately adopted, it was due to the Federalists opposition to the Bill of Rights as a whole and not objections to these specific proposals. *Coombes*, 2022 WL 4367056 at *6. Furthermore, in *Heller* the Supreme Court cited the Pennsylvania proposal as a "highly influential" "precursor" to the Second Amendment and favorably cited the New Hampshire and Massachusetts proposals as well. *Skoien*, 614 F.3d at 640 (quoting *Heller*, 554 U.S. at 604). While at least one sister court agrees with Mr. Rice's view that these proposals are unpersuasive, this Court respectfully disagrees. *See United States v. Hicks*, 2023 WL 164170, *4–5 (W.D. Tex. Jan. 9, 2023) (striking down § 922(n) as unconstitutional). The Court finds the commentary by the Supreme Court to be more instructive on the value of these proposals. Several other sister courts likewise agree that they provide useful guidance. *See e.g. Coombes*, 2022 WL 4367056 at *6; *United States v. Riley*, 2022 WL 7610264, *11 (E.D. Va. Oct. 13, 2022); *United States v. Collette*, 2022 WL 4476790, *6 (W.D. Tex. Sept. 25, 2022).

The Court would make an additional observation which suggests felons in particular would likely be excluded from the text of the Second Amendment. In discussing the ambit of the Second Amendment right in *Heller*, the Supreme Court initially describes it as belonging to "all members of the political community." 554 U.S. at 580. The Supreme Court made this comment in the context of concluding the Amendment confers an individual right and not just a civic right

and would later go on to characterize the right as one belonging to "law-abiding" and "responsible" citizens in the context of discussing what activity the right protects. Id. at 625, 365. Notwithstanding this context, opponents of the civic virtue theory argue the former language should be controlling and that the Second Amendment right extends beyond only the law-abiding citizenry. (*See e.g.* DE 28 at 15.)

However, when it comes to felons, there is a historical tradition of curtailing some core rights associated with being a member of the political community, namely voting and serving on a jury. *Kanter*, 919 F.3d at 453 n.3, 462 (Barrett, J. dissenting) (noting that history supports the restriction of voting rights and jury service to virtuous citizens); *see also United States v. Hill*, 2022 WL 17069855, *4 (S.D. Tex. Nov. 17, 2022) (ability to vote is a defining trait of membership in a political community); *Collette*, 2022 WL 4476790 at *6 (same).

The Court finds this language in *Heller* relating to members of the political community suggests corresponding restrictions on the ability of felons to bear arms are permissible. As a matter of basic reasoning it is hard to reconcile how the Framers of the Constitution could conclude that felons could not be trusted to wield pens in voting booths or jury rooms, but they simultaneously found them capable of wielding arms in the public square. *See Bruen*, 142 S.Ct. at 2134 (concluding the Second Amendment includes a right to carry handguns in public for self-defense).

In the Court's view, the fact the Framers excluded felons from core privileges afforded to members of the political community either suggests felons were not considered members of the political community, or even if they retained their membership post-conviction, their rights as members could nonetheless be considerably restricted without offending the Constitution. Either conclusion supports finding that the government has the power to restrict felons' ability to bear

arms just as it restricts their ability to vote and, ergo, that § 922(g)(1) is constitutional. Multiple sister courts have reached the same conclusion, both before and after *Bruen*. *See e.g. United States v. Rozier*, 598 F.3d 768, 771 & n.5 (11th Cir. 2010) (analogizing felon-dispossession statutes to felon disenfranchisement laws and noting other examples of how a criminal conviction allows further restriction of constitutional rights); *Hill*, 2022 WL 17069855 at \*4 ("Like voting rights, Second Amendment rights are a privilege afforded to the political community and can be forfeited upon demonstration that an individual does not, or no longer, fits the criteria to be a member of that political community."); *Collette*, 2022 WL 4476790 at \*6 ("[I]f the definition of "the people" is consistent throughout the Constitution—and it has been historically constitutional to exclude those convicted of a crime from "the people" under Section 2, Article I [electorate for House of Representatives]—it would also be constitutional then to exclude those groups from the Second Amendment's kindred 'political right.'"); *Coombes*, 2022 WL 4367056 at \*8 (noting that the right to bear arms and the right to vote were "intimately linked" in the minds of the Framers) (internal quotation omitted); *United States v. Johnson*, 2023 WL 2308792, \*5–6 (S.D. Fla. Feb. 20, 2023) (upholding § 922(g)(1) as applied to non-violent felons based on the historical treatment of felons).

Ultimately, the Court does not need to decide this issue in this case, as there are adequate other grounds for deciding the motion. In light of this and the mixed guidance from the Seventh Circuit on the civic virtue theory, the Court will decline to decide the issue in this case. For the purposes of this motion the Court will assume, without deciding, Mr. Rice's possession of a firearm is facially covered by the protective ambit of the Second Amendment.

That being said, even if the previously discussed historical evidence will not be used to define the scope of the Second Amendment right, it is nonetheless useful for defining the scope

15

of the legislature's power to take that right away. *See Kanter*, 919 F.3d at 452 (Barrett, J. dissenting) (Concluding that analysis under the civic virtue theory and the broader theory "typically yield the same result; one uses history and tradition to identify the scope of the right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away."); *see also Coombes*, 2022 WL 4367056, *3–9 (concluding the defendant was a member of "the people" protected by the Second Amendment, but the historical tradition of excluding felons from the common law right to bear arms was evidence felons can be lawfully disarmed).

(c) *The Court finds that the government has carried its burden at the second prong of the Bruen test*

The Government argues that there are two types of historical laws which provide sufficiently similar historical analogies for disarming non-violent felons under § 922(g)(1). The first are historical laws which authorized capital punishment and estate forfeiture for persons convicted of felonies. The second are laws categorically preventing a group from possessing firearms based on a legislative judgment that the group could not be trusted to adhere to the rule of law. The Court finds the first proposed set of historical regulations is sufficiently analogous and therefore does not need to analyze the second set of historical regulations.

As previously stated, the key inquiry is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen*, 142 S.Ct. at 2133. In terms of burden, § 922(g)(1) prevents a certain, clearly defined, group of people from possessing a firearm. As the Seventh Circuit noted in *Skoien*, the original meaning of the Second Amendment indicates that some categorical disqualifications on firearm possession are permissible. 614 F.3d at 640–41. Thus, the question

in this case is whether this specific group is one of those permissible categorical disqualifications. The group in question is individuals who have been convicted of committing a felony, including non-violent felonies.

As the Government notes in great detail, felonies were historically considered the most serious category of crime and were punished the severe penalties of estate forfeiture and capital punishment. (DE 33 at 11–12 (citing 4 William Blackstone, *Commentaries on the Laws of England* 95 (1769); *see also Folajtar v. Att'y Gen.*, 980 F.3d 897, 904–05 (3d Cir. 2020) (upholding § 922(g)(1) as applied to non-violent felons)). These punishments were not restricted to violent felonies. States also treated non-violent crimes such as forgery and horse theft as capital offenses. *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019) (citing Stuart Banner, *The Death Penalty: An American History* 18 (2002)). This was also true at the federal level. The First Congress, which drafted and proposed the Second Amendment, made a variety of felonies punishable by death including forging or counterfeiting a public security. *An Act for the Punishment of Certain Crimes Against the United States*, 1 Stat. 112–15 (1790). The use of these severe punishments on those convicted of violent and non-violent crimes shows that Mr. Rice's proposed distinction between violent and non-violent felonies is not supported by the historical record.[12]

As previously mentioned in this order, historical evidence suggests felons were not considered to be within the scope of the Second Amendment right and felons were also historically barred from voting or serving on a jury, thus depriving felons of core rights associated with being in a political community. *See supra* § C(2)(b). This evidence suggests, that

---

[12] As the Court notes elsewhere in this order, the disarmament of violent felons is also widely recognized as justified under the historical tradition of disarming dangerous individuals. *See infra* § C(3).

even if "the people" as contemplated by the Second Amendment was a broad class, felons were

excluded from the group following their convictions or their rights as members of this class

could be sharply curtailed. The conclusion that felons are one of the "groups that have

historically been stripped of their Second Amendment rights," was also recognized by the Fifth

Circuit in its *Rahimi* decision. 59 F.4th at 171; 2023 WL 2317796 at *4.

In light of this history, "it is difficult to conclude that the public, in 1791, would have

understood someone facing death and estate forfeiture to be within the scope of those entitled to

possess arms." *Folajtar*, 980 F.3d at 905 (quoting *Medina*, 913 F.3d at 158). Further, given the

exceptionally heavy burden these punishments place upon an individual, which inherently

deprives the individual of their Second Amendment rights, disarmament under § 922(g)(1) is a

comparatively lenient punishment and therefore is constitutionally permissible. The Court's

conclusion is reinforced by the analysis of sister courts which have likewise found that felons

were not considered within the common law right to bear arms by the Founders and there are

analogous restrictions on the rights of felons which support their categorical disarmament. *See*

*e.g. United States v. Carrero*, 2022 WL 9348792, *3 (D. Ut. Oct. 14, 2022); *Coombes*, 2022 WL

4367056 at *4–8 (providing a particularly rigorous historical analysis).

In terms of justification, it is undisputed that Congress enacted the exclusions in § 922 to

"keep guns out of the hands of presumptively risky people." *United States v. Yancey*, 621 F.3d

681, 683 (7th Cir. 2010). Mr. Rice does not dispute § 922(g)(1) acts towards that end. Rather he

argues it is overinclusive by including non-violent felons. However, the issue of overinclusion

relates to the question of the burden imposed by the regulation and not justification. As

previously discussed, the burden imposed by § 922(g)(1) is consistent with the history and

tradition of the United States.

Mr. Rice does not dispute the accuracy of the Government's description of the historical treatment of felons. Rather he presents two arguments on why the proposed analogies are not sufficiently similar.

First, Mr. Rice argues that estate forfeiture is not the same thing as extinguishing a possessory interest in firearms. Therefore, because "the Founding generation commonly meted out estate loss but never firearm loss [that] demonstrates the sacrosanct nature of the Second Amendment... ." (DE 38 at 25.) This argument is unpersuasive. Foremost, even if Mr. Rice was correct on this point, it does not address the other historical evidence relating to capital punishment and felon disenfranchisement which would be sufficient for the Government to carry its burden. Next, Mr. Rice misapprehends the nature of estate forfeiture. Estate forfeiture strips the subject of all of their property, which includes firearms. *See Folajtar*, 980 F.3d at 904. Therefore, imposing the penalty of estate loss inherently extinguishes the individual's possessory interest in any firearms they may have. There is also some historical evidence that felons were precluded from owning property or chattels, and this broad prohibition on possessing property inherently means they could also not possess a firearm. *Coombes*, 2022 WL 4367056 at *6.

Second, he argues the fact that capital punishment and estate forfeiture were "commonly used" is distinct from the loss of Second Amendment rights attendant with every felony conviction as provided for by § 922(g)(1). This argument is also unpersuasive. As an initial matter, Mr. Rice seems to be attempting to redefine the Government's burden to require the production of a "historical twin." Specifically, it appears Mr. Rice would only be satisfied if the Government produced evidence that every convicted felon in 1791 was executed or had their estate forfeited. That is not the burden imposed by *Bruen*. The fact that these types of punishments were in common use near the time of ratification indicates they were considered to

be constitutionally permissible sanctions for persons convicted of felonies. Moreover, the historical record suggests that capital punishment for felonies was "ubiquitous" in the Founding era and was "the standard penalty for all serious crimes." *Medina*, 913 F.3d at 158 (quoting *Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J. concurring) (other internal citations omitted)). This suggests that the historical record would satisfy Mr. Rice's heightened requirement as well as the *Bruen* standard.

The Court concludes that § 922(g)(1) imposes a similar or lesser burden on the Second Amendment right compared to historic regulations restricting the rights of felons, and the burden is comparably justified. Therefore the Court also concludes the Government has carried its burden at the second prong of the *Bruen* test and that § 922(g)(1) would be constitutional on this basis. Consequently, even if Mr. Rice's as-applied challenge was not foreclosed by binding Seventh Circuit precedent, it would also fail on the merits.

### (3) Mr. Rice's facial challenge

The Court will briefly discuss Mr. Rice's facial challenge. As a preliminary matter, the government argues that Mr. Rice is not entitled to bring a facial challenge to § 922(g)(1) based on Seventh and other circuit precedent precluding such challenges under the Second Amendment. (DE 33 at 5 (citing *Baer v. Lynch*, 636 Fed.Appx. 695, 697 (7th Cir. 2016) (itself citing *Skoien*, 614 F.3d at 645) (collecting cases))). In response Mr. Rice suggests that the *Salerno* standard described in the Government's argument has fallen out of favor and the Court should adopt *Rahimi*'s interpretation that Second Amendment facial challenges are permissible. (DE 38 at 6–7.)

The Court finds this issue to be moot. For the reasons discussed previously, Mr. Rice's as-applied challenge fails due to binding circuit precedent and because § 922(g)(1)'s prohibition

on non-violent felons possessing firearms is consistent with the history and tradition of firearms regulation in the United States. The failure of Mr. Rice's as-applied challenge means that his facial challenge fails as well. *Patel*, 576 U.S. at  418; *Salerno*, 481 U.S. at 745. The Court would note that in addition, and in the alternative, to the previously described reasons, Mr. Rice's facial challenge would also fail as his proffered legal authority disagrees with his position.

Mr. Rice's facial challenge advances the extraordinary proposition that Congress lacks the authority to disarm anyone on the basis of their felony conviction, regardless of how violent or dangerous they might be. After all a facial challenge requires the defendant to prove a statute is unconstitutional in all applications and some convicted felons who have been or will be disarmed are violent, dangerous, and otherwise downright disagreeable individuals. *Patel*, 576 U.S. at  418 (To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications); *see e.g.* 18 U.S.C. §§ 1111 (homicide), 2242 (sexual abuse), 249 (hate crime acts). Mr. Rice indicates in this reply that he understands this is his burden and reaffirms that it is the position he is advocating. (DE 38 at 6–7.)

Mr. Rice cites no legal authority agreeing with this extraordinary position. The closest he comes is Justice Barrett's dissent in *Kanter* where she argues § 922(g)(1) is only constitutional as applied to violent felons. *Kanter*, 919 F.3d at 451 (Barrett, J. dissenting). However, this non-binding authority actually rejects the sweeping proposition in Mr. Rice's facial challenge. Justice Barrett eloquently opens her dissent with the observation "[h]istory is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns." *Id*. The class of dangerous people includes violent felons and § 922(g)(1), in her opinion, is constitutional when applied against them. *See id.* Justice Barrett also notes that

21

legislatures are empowered to categorically exclude persons who are dangerous or untrustworthy from possessing firearms as such regulations are "lineal descendants" of historical laws. *Id.* at 465.

Conversely, the position being advocated in Mr. Rice's facial challenge is not consistent with history or common sense. If history establishes that the government may *at the very least* disarm violent or dangerous felons as a class, then there are a considerable number of instances where § 922(g)(1) is constitutional.[13] Thus, Mr. Rice cannot establish the statute is unconstitutional in *all instances*. The academic works cited by Mr. Rice in support of his facial challenge are likewise unavailing. These works support the limited proposition that there is no historical twin to § 922(g)(1), but otherwise do not endorse his sweeping conclusion. Consequently, the Court finds Mr. Rice would fail to carry his burden in bringing a facial challenge.

**D. Conclusion**

Accordingly, for the reasons previously stated, Mr. Rice's motion to dismiss the indictment is DENIED (DE 28).

SO ORDERED.

ENTERED: March 17, 2023

                             /s/ JON E. DEGUILIO
                             Chief Judge
                             United States District Court

---

[13] The Court would again note that *Kanter* is the most favorable authority for Mr. Rice's position. The remainder of the case law he cites in this section, for the limited description of describing the history of § 922(g)(1), ultimately uphold the challenged firearm restrictions. Interestingly, none of those cases used to describe the history of § 922(g)(1) actually involve challenges to that section. *N.R.A. v. A.T.F.*, 700 F.3d 185 (5th Cir. 2012) (challenge to §§ 922(b)(1), (c)(1)); *United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) (challenge to § 922(g)(9)); *Skoien*, 614 F.3d 648 (same); *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) (same).